UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                    CASE NO. 06-20324
                                             HON. LAWRENCE P. ZATKOFF
        Plaintiff,

vs.

ALI S. MAKKI, M.D.,

        Defendant.

_____/


**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on March 13,  2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE


        This matter is before the Court on twelve motions filed by Defendant ALI S. MAKKI, M.D.

Each of the motions has been fully briefed by both parties.  The Court finds that the facts and legal

arguments pertinent to Defendant's motions generally are adequately presented in the parties'

papers, but the Court also held a hearing on February 13, 2007, to hear arguments regarding matters

that required clarification.  In addition, the Court allowed each party to file a 10 page supplemental

brief regarding the issues at hand.  Each party filed a 10 page supplemental brief.  In addition,

subsequent to the hearing and the filing of the supplemental briefs, Defendant has filed a thirteenth

motion, a Motion to Strike the Affidavits attached to the Government's supplemental brief.   The

Court now addresses each of Defendant's motions.

**I.  INTRODUCTION**

Defendant Ali S. Makki is charged in a 40-count Indictment with the offenses of Health Care Fraud, in violation of 18 U.S.C. § 1347; Material False Statements Related to Health Care Matter, in violation of 18 U.S.C. § 1035; Illegal Distribution of Schedule III and IV Controlled Substances, in violation of 21 U.S.C. § 841(a)(1); Material False Statements on Immigration Documents, in violation of 18 U.S.C. § 1546(a); and False Statements to a Government Agency, in violation of 18 U.S.C. §1001.  In addition, the Government has filed one Forfeiture count.

## II. BACKGROUND

Born in Sierra Leone, Defendant immigrated to the United States in October 1975, and became a naturalized American citizen in October 1982. On September 23, 1983, Defendant obtained a medical degree from the American University of the Caribbean, then located in Montserrat, British West Indies.  Two years later, he obtained his medical license from the State of Michigan. On September 26, 1990, the Immigration and Naturalization Service ("INS") approved his request to become designated as a "Civil Surgeon," a special classification that allowed him to certify that immigrant patients met the medical requirements to become permanent resident aliens and obtain "green cards."

On August 4, 1993, after eight years of practicing medicine in Dearborn, Michigan, Defendant was convicted of one count of mail fraud, sentenced to 10 months in a community correction facility, placed on probation and fined $2,000. He was also ordered to pay $100,000 in restitution to Blue Cross Blue Shield of Michigan. As a result of this conviction, on January 18, 1995, the Michigan Board of Medicine placed Defendant on one year probation, reprimanded him and fined him $1,000.

On July 12, 2004, United States Magistrate Judge Mona J. Majzoub signed three Search Warrants, authorizing agents from the FBI, the U.S. Department of Health and Human Services Office of the Inspector General ("HHS-OIG"), the Department of Homeland Security ("DHS") and Drug Enforcement Agency ("DEA") to search Defendant's medical office at 6050 Greenfield Road in Dearborn, Michigan (the "Medical Office"), his residence at 6137 University Drive, Dearborn Heights, Michigan (the "Residence") and the laboratory of a third party (the search warrant related to the laboratory is not at issue here). The Search Warrants were based on three nearly identical documents titled "Application and Affidavit for Search Warrant" (the "Application" and "Affidavit" respectively), each of which was submitted by FBI Special Agent Diana Cool-Llorens. The only differences between the three documents were that each listed a different property to be searched.

Each Application explicitly referenced only one statute on the cover sheet - the federal Health Care Fraud statute, 18 U.S.C. § 1347. In the referenced and incorporated "Attached Affidavit" on each Application, Special Agent Cool-Llorens identified four other federal offenses, including mail fraud (18 U.S.C. § 1341), making false statements (18 U.S.C. § 1001), aiding and abetting (18 U.S.C. § 2) and immigration fraud (18 U.S.C. § 1425). The two Search Warrants at issue here also contained the language "See Attached Affidavit" where the items to be seized were to be listed. According to the Government, that part should have read "See Attachment A." In fact, the Affidavit attached to the Application filed on the Court docket includes such an "Attachment A," and the executed Search Warrants filed on the Court docket also include an identical "Attachment A," each of which consists of a list of items to be seized.

The list of items on Attachment A can be summarized as allowing agents to seize records related to patients, shipping, correspondence, insurance, billing, employees, calendars, travel, and

finances. The list allowed the agents to take both paper documents and those stored on computers and other electronic storage devices.  Shortly after executing the Search Warrants, Special Agent Cool-Llorens died.

### III.  ANALYSIS

**A.      Discovery Motions**

    *1.      Motion for Discovery*

Defendant asks that the Government: (a) produce all *Jencks* materials at least four weeks prior to trial; (b) produce materials for all persons the Government does not intend to call as witnesses at trial, as required by *Brady* and *Giglio*; (c) produce informant files for confidential sources one through nine cited in the Affidavit; and (d) disclose all statements or records of contacts or communications with Defendant, pursuant to Fed. R. Cr. P. 16.  Defendant also requested that the Government return a diary of the Defendant, although the parties agree that this matter has been resolved.   For the reasons that follow, Defendant's Motion for Discovery is denied without prejudice.

There are 73 persons listed as possible witnesses by the Government.  Defendant argues that the *Jencks* requirement of disclosures only after testimony will create a significant backlog throughout this case if the Government does not disclose the *Jencks* material much earlier. The Government has responded by stating that it recognizes its obligations pursuant to *Jencks* and that it will comply with them in a timely fashion.  The Government has further indicated that it will provide some information prior to trial but not information for all of the witnesses because of concerns that Defendant will try to intimidate some of them.  The Government claims that since the

investigation of Defendant began, Defendant has (I) threatened to physically harm an individual he believed was a confidential informant, (ii) violated federal medical privacy laws, and (iii) accused persons of stealing patient files that were later found in a safe at Defendant's home.

In light of the foregoing arguments and the applicable law in this area, the Court concludes that it is not necessary, nor would it be prudent, to order the Government to produce *Jencks* materials at this time, or even four weeks prior to trial. Accordingly, Defendant's motion is denied with respect to the request for *Jencks* materials. In order to facilitate an orderly and efficient trial in this matter, however, the Court strongly encourages the Government to turn over information as soon as reasonably possible, in light of its concerns, with respect to each person it intends to call at trial.

Although Defendant desires grand jury testimony of witnesses who won't testify at trial so that he can gauge whether the testimony is exculpatory, the Sixth Circuit has rejected that argument. *United States v. Short*, 671 F.2d 178 (6th Cir.), *cert. denied*, 457 U.S. 1119 (1982). The Government also represents that any witness statements that are exculpatory will be turned over, as required under *Brady*. Therefore, Defendant's motion is denied with respect to its request for witness materials for all witnesses the Government does not intend to call at trial, except as such materials are required by applicable law.

As to the Rule 16 disclosure of statements by Defendant, the Court understands that the Government has now provided any and all documents that contain written statements of Defendant. As such, this portion of Defendant's motion is denied as moot.

The Court now turns to Defendant's request that the Government turn over informant files for confidential sources one through nine, as set forth in the Affidavit. As a general rule, the

5

Government has the privilege to withhold the identity of its confidential informants. *Roviaro v. United States*, 353 U.S. 53, 59 (1957); *United States v. Jenkins*, 4 F.3d 1338, 1341 (6th Cir. 1993), *cert. denied*, 511 U.S. 1034 (1994). The defendant bears a heavy burden to show that an exception to this privilege should be made: "An informant must be disclosed **only** upon a showing by the defendant that disclosure is **essential** to a fair trial." *Jenkins*, 4 F.3d at 1341 (emphasis added); *United States v. Moore*, 954 F.2d 379, 381 (6th Cir.), *rehearing denied* (1992).

A defendant must produce probative evidence supporting the need for disclosure. *United States v. Sharp*, 778 F.2d 1182, 1187 (6th Cir. 1985), *cert. denied*, 475 U.S. 1030 (1986). "Mere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure." *Id.*, at 1187; *Moore*, 954 F.2d at 381 (finding that the government is not required to disclose the identity of an informant where defendant "advanced no more than a simple statement that [the informant] might assist in his defense"). In the absence of such evidence, it is inappropriate for the district court to compel production of the informant for an *in camera* review. *Sharp*, 778 F.2d at 1187. Unsworn assertions of his counsel will not suffice. *Id.*

In support of his request for confidential files, Defendant falls far short of the threshold required. Most significantly, the Court finds that Defendant has not produced any probative evidence supporting the need for disclosure. Defendant originally has based his argument solely on the assumption that confidential sources one and two are Defendant's brother, Hussein Makki, and Rania Taha, a former employee of Defendant and a friend of Hussein Makki's. The Government disputes that confidential sources one and two are Hussein Makki and Rania Taha. The Government has expressly stated that Defendant's "assumption as to the sources' identity is not accurate . . ." and, at the hearing, represented that Hussein Makki was not any of the confidential

sources described in the Affidavit.  The Government confirmed that Rania Taha was not confidential source two, and it essentially conceded that she was confidential source one relied upon in the Affidavit.

In his supplemental brief, Defendant argues that confidential source one (Rania Taha) "was in essence two people: Rania Taha and Hussein Makki, and that the Government cannot claim that Hussein Makki was not a source used to obtain the search warrant by funneling information he stole through Rania Taha."  The Court finds that Defendant's focus is misplaced.  Defendant hones in on certain events tied to Hussein Makki (and, to a lesser extent, Rania Taha) and argues that they demonstrate a compelling need to have the identity of confidential sources one and two (the Court assumes Defendant still desires disclosure, even though Hussein Makki is not a confidential source) revealed and their confidential files disclosed.  Defendant does not, however, address how disclosure of confidential sources one and two is essential to a fair trial, especially as Hussein Makki is not one of those confidential sources.   Finally, Defendant does not address his "need" for the files for confidential sources three through nine, or how disclosure of them is essential to a fair trial.

As such, the Court concludes that Defendant has not met his burden of demonstrating a need for the disclosure of the files of the confidential sources.  Defendant's motion therefore is also denied with respect to his request for informant files.

### 2.   *Motion for Discovery of Expert Witnesses*

The Government has indicated that it may call as many as 10 experts at trial. Defendant asks the Court to enter an Order requiring the Government to provide a written summary of the testimony of any expert the Government intends to call at trial and that such summaries be provided at least six weeks prior to trial.  In response, the Government proposed a reciprocal

exchange of expert witness summaries. The Government's proposal, however, is inconsistent with Fed.R.Cr.P. 16(a)(1)(G), which specifically provides that the Government's obligation to produce written summaries for its experts is triggered on a defendant's request. A defendant need not reciprocate until the Government has met its obligations. Fed.R.Cr.P. 16(a)(1)©.

In light of Defendant's request and the applicable law, the Court grants in part and denies in part Defendant's Motion for Discovery of Expert Witnesses. More specifically, the Court Orders the Government to supply Defendant with written summaries of the expert witnesses the Government intends to call no later than four weeks prior to the date this matter is set for trial. Defendant shall then provide his expert witness summaries , if any, to the Government no later than two weeks prior to the date this matter is set for trial.

3.    *Request For Notice Of Intent To Use Other Crimes, Wrongs or Acts At Trial*

Defendant asks the Court to order the Government to provide reasonable notice in advance of trial of its intent to use any evidence of other crimes, wrongs, or acts of Defendant, pursuant to Fed.R.Evid. 404(b). Rule 404(b) provides that, upon request by the defendant, the prosecution must provide reasonable notice in advance of trial, "or during trial if the court excuses pretrial notice on good cause shown," of the general nature of any evidence of  lack of motive, opportunity, intent, preparation, plan, knowledge, identity, mistake, or accident it intends to introduce at trial.

The Government asks the Court to deny Defendant's motion because the Government

> does not currently intend to use in its case-in-chief evidence
> of the prior convictions or of other crimes, wrongs, or acts,
> unless Defendant injects a lack of motive, opportunity, intent,
> preparation, plan, knowledge, identity, mistake, or accident,
> as a defense.

The Government believes, however, there is extensive evidence that Defendant has been involved in activities similar to those with which he is now charged since he obtained his medical license in 1985.  Then, the Government states that it will fully apprise Defendant as required under 404(b) if the Government's position changes.  As Defendant notes, however, the Government's response is really a non-answer.  In setting forth the list of exceptions that might trigger the Government's decision to use 404(b) evidence in this case, the Government has essentially replied that it will introduce 404(b) evidence if Defendant introduces a defense.  Accordingly, the Court hereby denies Defendant's motion because the Government has stated that it does not intend to use 404(b) evidence in its case-in-chief.  The Court notes that this denial is without prejudice, however, and the Government is hereby cautioned that it will need "good cause" to be able to introduce 404(b) evidence at trial if Defendant is not provided reasonable notice of the general nature of any such evidence at least two weeks in advance of trial.

> 4.    *Motion For A Bill Of Particulars*

Defendant asks that the Government provide him with (a) the date and patient name for all office visits not provided in Count One, as well as the claim submissions related to such visits, (b) the patient name, date of billing and services and specific claim submission with respect to the "harvest of the upper extremity procedure" described in Count Two, (c) the patient name, date of billing and service for those patients who were given unnecessary blood tests and procedures, as charged in Count Three, (d) the instances of conduct that are part of the pattern and practice alleged in paragraph 44 with respect to Counts 17-25, (e) the patient names and dates for the immigrants who Defendant could not have found that they had 16 Class A medical conditions because he was on vacation, as charged in Counts 28-32, (f) as to Count 40, identifying the offense(s) upon which

the Government relies, and (g) identifying how paragraphs 10-17 (incorporated by reference into Counts 1-39) legally pertain to each count in the Indictment. Defendant believes he is entitled to this Bill of Particulars because the Indictment does not sufficiently inform him of the charges against which he will have to defend at trial. *United States v. Haskins*, 345 F.2d 111, 114 (6th Cir. 1965).

Since Defendant filed his motion, the Government has provided Defendant the information requested in parts (a) - (c). Several lists of the data desired by Defendant with respect to Counts One, Two and Three were attached to the Government's response. Although this list is not in the form of a Bill of Particulars, the Court can deem such exhibits to be a Bill of Particulars. *See* Fed.R.Cr.P. 7(f). Accordingly, the Court hereby Orders that Exhibits 1, 2, 3A and 3B to the Government's response to Defendant's Motion for Bill of Particulars shall constitute a Bill of Particulars.

In its response brief, the Government stated that it had not yet provided Defendant with a similar list of data with respect to parts (d) and (e) but that it would do so. At the hearing, the Government stated that it had since provided Defendant with the information in parts (d) and (e), thereby rendering Defendant's motion moot as to parts (d) and (e). The Court notes that the issues in paragraph (f) shall be addressed below in Section III.D.2., and the issues in paragraph (g) shall be addressed in Section III.B.3. below.

Therefore, for the reasons set forth in this Section, Section III.B.3. and Section III.D.2., Defendant's Motion for a Bill of Particulars is DENIED in part and GRANTED in part.

**B.      Dismissal of Indictment and/or Counts**

*1.      Motion to Dismiss Counts 35-39 Charging 18 U.S.C. § 1001*

Defendant argues that Counts 35-39 of the Indictment should be dismissed, as a

matter of law, because they do not allege offenses. Counts 35-39 allege that Defendant falsely signed certifications on immigration form INS-693, wherein he affirmed that immigration patients had tested "non-reactive" to a TB skin test. Defendant argues that the only certification he made on the INS-693 forms was that "My examination showed the applicant to have met the medical examination and health follow-up requirements for adjustment of status." Defendant further states that when the foregoing certification is read in conjunction with Government regulations, his statements cannot be viewed as false.

        As Defendant correctly states, Rule 12(b) "clearly envision[s] that a district court may make preliminary findings of fact necessary to decide questions of law presented by pre-trial motion so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976). Contrary to Defendant's arguments, however, the issue presented in his Motion to Dismiss Counts 35-39 turns on <u>facts</u> to be determined by the ultimate trier of fact. The INS-693 form requires Defendant to certify that the "applicant . . . met the medical examination . . . requirements for adjustment of status." The Court finds that there is at least a question of fact that such certification is true because INS regulations <u>require</u> that each immigration patient be given a TB skin test. *See* "Technical Instructions for Medical Examinations Of Aliens In the United States," which state

> All applicants 2 years of age or older ***are required*** to have a tuberculin skin test to determine whether the applicant is infected with <u>Mycobacterium tuberculosis</u>."

Instruction III(A)(1)(a) (emphasis added). Therefore, if Defendant checked the "yes" box in response to the question of whether he gave a TB skin test but he did not give the TB skin test, there is a question of fact whether Defendant made a false statement in completing the INS-693 forms.

11

Defendant also argues that a TB skin test is not a determinative procedure for assessing whether an applicant has "tuberculosis, active" because INS regulations provide that only a chest x-ray and, if necessary, a sputum smear, can be dispositive of that condition. Accordingly, Defendant suggests, the absence of a skin test is not material as a matter of law. Again, this is not an issue of law; it is a fact-based defense. Accordingly, Defendant's Motion to Dismiss Counts 35-39 is DENIED.

2.   *Motion To Dismiss Counts One, Two and Three For Failure To State An Offense And Duplicity*

Count One alleges a scheme to defraud between November 2002 and February 2004, whereby Defendant submitted claims for reimbursement to Medicare on dates when Defendant was on vacation. Count Two alleges a scheme to defraud from November 2003 to February 2004 involving "at least 3 patients for whom claims were submitted to Medicare for services . . . not performed." Count Three alleges a scheme to defraud Medicare by means of "routine pattern and practice" concerning the ordering of unnecessary blood tests between January 2001 and July 2004. None of the three counts includes a description of one or more specific claims, whether by patient name, date or other identifying information.

Defendant argues that the health care fraud offenses set forth in Counts One, Two and Three fail to specify a particular date on which a fraudulent claim was submitted. Defendant therefore moves the Court to dismiss those counts because each count fails to allege an essential element of the charges. Defendant therefore believes that the Government has failed to set forth a "unit of prosecution" in any of the three counts arising out of 18 U.S.C. §1347, which states:

> Whoever knowingly and willfully executes, or attempts to execute,
> a scheme or artifice- (1) to defraud any health care benefit program;
> or (2) to obtain, by means of false or fraudulent pretenses,

12

> representation, or promises, any of the money or property owned by,
> or under the custody or control of, any health care benefit program,
> in connection with the delivery of or payment for health care benefits,
> items, or services, shall be fined under this title or imprisoned not
> more than 10 years or both.

Defendant argues that a "unit of prosecution" is each separate execution of a scheme to defraud, *i.e.*, each date that it occurred. Defendant states that each unit may be "pled as a distinct Count of the indictment," *United States v. De La Matta*, 266 F.3d 1275, 1287-89 (11th Cir. 2001), as there is an obligation for a provider to be truthful to a health benefit program (Medicare) with respect to each claim submission. *See United States v. Hickman*, 331 F.3d 439, 446 (5th Cir. 2003). The Court also notes that the Fifth Circuit subsequently held that even a scheme requires that at least one such execution (date) must be alleged, *United States v. Kirkham*, 129 Fed.Appx. 61, 67-69 (5th Cir. 2005) (unpublished), although it did not require the Government to charge a defendant with every separate execution. This issue has not been addressed directly by the Sixth Circuit.

The Court has reviewed the Indictment in this case, and the Court is not persuaded that a particular date must be specified in order for Defendant to have notice of charges against which he must defend. In each of the three counts at issue here, the language tracks the language of §1347, which is generally sufficient to state a claim, *see, e.g., United States v. Bailey*, 444 U.S. 394, 414 (1980), though it is true that the Indictment also must contain the "essential facts constituting an offense charged." Fed. R. Cr. P. 7(c)(1); *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992).

The Court finds that each of the first three counts contains the essential facts constituting the offense charged. Each count clearly describes the allegedly illegal conduct of Defendant and the dates within which the alleged conduct occurred. For example, in Count One,

the Indictment indicates that there were 23 claims billed while Defendant was not in the office.  The Indictment sets forth a specific number of claims billed for each of the four periods when Defendant was on vacation (each of which was also specified).  Similarly, in Count Two, the Indictment states that there are 32 patients for whom Defendant performed procedure code 35500 (a "harvest of the upper extremity veins") between November 2003 and February 2004, a period of 4 months or less.  Moreover, as discussed in Section III.A.4. above, the Government has now provided Defendant with an itemized list of all of the relevant claims with respect to Counts One, Two and Three.  For the foregoing reasons, the Court concludes that the charges in Counts One, Two and Three are legally viable and provide Defendant with sufficient notice of the essential facts constituting the charges against him.

Defendant next argues that each of Count One and Count Two is duplicitous and should be dismissed because each sets forth separate and distinct crimes in one count. *United States v. Davis*, 306 F.3d 398, 415 (6th Cir. 2002).  Defendant argues that the Court must assess whether the alleged offenses are separate and that the offenses are separate if each alleged offense requires proof of an additional fact that another allegation does not (*e.g.*, a claim submitted on February 19, 2004, versus a claim submitted on February 20, 2004). *United States v. Blockburger*, 284 U.S.299 (1932).  Defendant further asserts that because the Indictment states numerous billings (23 claims in Count One and 32 claims in Count Two) but does not specify which one (or more) of the listed transactions would be used to "illustrate the defendants' execution of the scheme," it is duplicitous. *Kirkham*, 129 Fed. Appx. at 65.  Defendant argues that without designating a date, there is a danger that the jury could reach a guilty verdict even if they don't reach a unanimous verdict on one specific allegation.

14

As the Government notes, however, this concern is unfounded.  To the extent that there are duplicitous charges in the Indictment, they can be remedied by jury instructions that require the jury to unanimously decide the act(s) of Defendant which form the basis of their conviction and a special verdict form on which the jury must specify such act(s). *United States v. Blandford*, 33 F.3d 685, 699 (6th Cir. 1994), *cert. denied*, 514 U.S. 1095 (1995).  In this case, the Court assures the Defendant that, if requested, the Court will instruct the jury accordingly and provide the jury with a special verdict form that will require the jury to specify each such act.[1]

Defendant also argues that he has not gotten proper notice under Fed. R. Cr. P. 7 and is exposed to double jeopardy.  For the reasons set forth in this Section, the Court finds that Defendant's contentions are without merit.  Accordingly, Defendant's Motion to Dismiss Counts One, Two and Three is DENIED.

3.   *Motion To Dismiss The Indictment As Duplicitous Because of Incorporation Of Paragraphs 10-17 In Every Count, Or In The Alternative, To Strike Those Paragraphs As Surplusage*

Fed. R. Cr. P. 7(d) allows a trial court to strike surplusage from an indictment, provided that the court exercises sound discretion in doing so.  A trial court is not required to (and generally will not) strike surplusage from an indictment. *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974).

As Defendant notes, Paragraphs 10-17 of the Indictment are set forth in a section called "Unlawful Schemes."  Each of the first 39 counts (all but the forfeiture count) of the

---

[1]In the event this case goes to trial, the Court directs Defendant to submit jury instructions which specify that, in order to convict Defendant of any act(s), the jury must unanimously agree on each such act/date/claim, as well as the appropriate language for the special verdict form to be presented to the jury, all of which are to be submitted with the parties' joint jury instructions.

15

Indictment specifically incorporates Paragraphs 10-17 (among others).  Defendant argues that the incorporation of Paragraphs 10-17 (some of which deal with health care fraud allegations (Paragraphs 10-12), some of which involve immigration fraud allegations (Paragraphs 13-16) and one of which includes allegations of the illegal distribution of controlled substances (Paragraph 17)) into all of the counts results in duplicitous charges in every one of those 39 counts.  Defendant argues that he will be prejudiced if such incorporation is permitted.  Defendant believes a jury could use a finding of guilt on immigration fraud and apply it to Count One because of the incorporation.  As a result, Defendant argues the jury could find Defendant guilty of Count One, even if there is no finding of guilt with respect to health care fraud.  Defendant also argues that the allegations in Paragraphs 10-17 create ambiguity that could confuse the jurors.  As such, Defendant moves the Court to dismiss the Indictment or, in the alternative, to strike Paragraphs 10-17 as surplusage.

The Court does not agree that the incorporation of Paragraphs 10-17 will enable the jury to convict Defendant of health care fraud simply on a finding that Defendant committed another crime (*e.g.*, immigration fraud.  This is particularly true as (a) the Court always instructs the jury that the Indictment does not constitute evidence, (b) the jury instructions on each count will be limited in scope to the charge specified in the paragraphs of each count (*i.e.*, the jury instructions on Count One will require the jury to find that Defendant violated the health care fraud statute, 18 U.S.C. §1347), and (c) any jury instructions to be given in this case will not incorporate the language from Paragraphs 10-17 any manner.  Accordingly, the Court declines Defendant's request to dismiss the Indictment as a result of the language in Paragraphs 10-17.  For the same reasons, the Court denies Defendant's request to strike Paragraphs 10-17 of the Indictment.

For the reasons set forth in this Section, Defendant's Motion to Dismiss Indictment

as Duplicitous Because of Incorporation of Paragraphs 10-17 in Every Count, or, In the Alternative, to Strike Those Paragraphs as Surplusage is DENIED.

## C.   Search Warrants

*1.   Motion for a* Franks *Evidentiary Hearing and to Suppress Evidence Seized Pursuant to Search Warrants*

The Supreme Court has held that a defendant is entitled to an evidentiary hearing on the veracity of the statements in a search warrant affidavit <u>only</u> if there is a substantial preliminary showing:

> (1) that specified portions of the affiant's averments are deliberately or recklessly false, and (2) a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material was set to one side.

*Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). *See also United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005); *United States v. Campbell*, 878 F.2d 170, 171 (6th Cir. 1989).  It is not enough for the defendant to show that an averment is false or made in reckless disregard of the truth; the defendant must show that the affiant knowingly made that false statement. *United States v. Murray*, 35 Fed. Appx. 125, 127 (6th Cir. 2002)(unpublished).

A *Franks* challenge is also permitted when the affiant omits material facts because a search warrant may be equally deficient or misleading when information is omitted. *United States v. Harris,* 464 F.3d 733 (7th Cir. 2006). *See also United States v. Carpenter,* 360 F.3d 591,  597 (6th Cir. 2004) ("material information must have been deliberately or recklessly omitted and must have *undermined* the showing of probable cause"). When a defendant succeeds in showing that the affiant deliberately or recklessly omitted material information that undermined probable cause, the court must redetermine probable cause as if the affidavit had included the material omissions at the time

17

of issuance. *United States v. Atkin,* 107 F.3d 1213, 1217 (6th Cir. 1997).

Courts have held *Franks* hearings where a defendant has shown that an affiant recklessly depended on and included information from unreliable informants. *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) (granting a *Franks* hearing and suppression when the affidavit raised serious questions, failed to fully describe the observations of the confidential informant and failed to provide any indicia of reliability for a "citizen" informant). *See also United States v. Giacalone*, 853 F.2d 470, 476 (6th Cir. 1988)(stating that a basis for a *Franks* hearing includes repeated stories of confidential information with reckless indifference to the truth). Courts have also held *in camera* hearings when there was a need to protect a confidential informant whose reliability had not been established in an affidavit. *See, e.g. United States v. Reeves,* 210 F.3d 1041, 1044 (9th Cir. 2000). *See also Bivens v. United States*, 927 F.Supp 1031,1034 (E.D. MI, 1996) (Gadola, J.) (noting that the district court held a *Franks* hearing and an *in camera* hearing of the confidential informant to evaluate the informants credibility).

In this case, Defendant asserts that he is entitled to a *Franks* hearing and the suppression of all evidence obtained pursuant to the Search Warrants because (a) confidential sources one and two were unreliable, (b) evidence was seized illegally prior to the search, (c) the affiant intentionally omitted negative information about one of the informants, and (d) that absent such improper information the affidavit failed to support probable cause that evidence of health care fraud would be found.

Once again, Defendant's argument is plagued by his assumptions that confidential sources one and two were Hussein Makki and Rania Taha, or (as Defendant now asserts) that Hussein Makki is the driving force behind the actions of Rania Taha (now believed to be

18

confidential source one).  As noted above, the Government has denied that Hussein Makki is a confidential source identified in the Affidavit.  The Government also has represented that Hussein Makki will not be a witness at trial and that no evidence that went through his hands will be introduced at trial.  Moreover, all of Defendant's arguments are specific to the alleged acts of Hussein Makki and Rania Taha, not to the acts of confidential sources one and two.

The Court first notes that Defendant has produced no evidence that confidential sources one and two are unreliable, only assertions that Hussein Makki and Rania Taha are unreliable.  Any information regarding the reliability and credibility of Hussein Makki is irrelevant to the analysis herein because he is not a confidential informant.  The Court also notes Defendant's contentions that the alleged improprieties of Rania Taha stem from and are attributable to the actions of Hussein Makki such that her actions are an extension of him.  The Court finds no evidence to support those conclusions.

Second, the Court finds that there is abundant corroborating evidence in the Affidavit to support the claims of confidential sources one and two and demonstrate their reliability and credibility.  In fact, the only information provided by those confidential sources that was not corroborated was the claim by confidential source one that Defendant ordered two employees to help fabricate medical records.  With respect to the other information provided by confidential sources one and two, there was corroborating evidence obtained by agents from employees or former employees, health insurance companies, trash at the Medical Office and the Residence, patient interviews and other informants.

Defendant's argument that the corroborating evidence is the fruit of illegal, stolen information also fails.  Defendant believes Hussein Makki stole the information, and Defendant has

19

not asserted that anyone other than Hussein Makki and Rania Taha stole any records from Defendant. Defendant relies on comments made by Hussein Makki to claim that Hussein Makki stole medical records at the direction of the Government. The Court cannot agree. Hussein Makki, proceeding in a *pro se* capacity in a civil matter, stated that he "has acted as a confidential informant for law enforcement," "took documents from [Defendant's] Office as part of a criminal investigation into the [Defendant's] criminal behavior, and "supplied [information] to law enforcement." Nowhere does Hussein Makki say he or Rania Taha was acting at the direction of the Government. Accordingly, the Court finds that the statements of Hussein Makki do not provide sufficient evidence that his (or Rania Taha's) actions were at the request or direction of the Government.

Third, as Hussein Makki is not a confidential source, Defendant's assertions about him are meaningless as to the alleged "deliberate or recklessly false" statements Special Agent Cool-Llorens made with respect to him (or, for that matter, omitted to include about him). Defendant has not asserted that Special Agent Cool-Llorens failed to reveal negative information that would undermine the credibility of any confidential sources. As Hussein Makki was not a confidential source, there was no obligation to make any statement concerning him in obtaining the search warrant. Moreover, Defendant has not asserted that Rania Taha has any negative information that would have to be disclosed (the Court does not consider her relationship with Hussein Makki to be such information). For those reasons, the Court concludes that Defendant has failed to show that deliberately or recklessly false statements were made by Special Agent Cool-Llorens or that she recklessly or deliberately omitted material information *vis a vis* confidential sources one and two.

As the Court finds that (1) Defendant has not produced any evidence that Special Agent Cool-Llorens relied on or withheld improper information, and (2) the Affidavit clearly afforded

Magistrate Judge Mazjoub probable cause to believe there was evidence of health care fraud (and other crimes), the Court concludes that Defendant's contention that the Affidavit failed to support a finding of probable cause is baseless.

For the foregoing reasons, Defendant's Motion for a *Franks* Hearing and to Suppress Evidence Seized Pursuant to the Search Warrants is DENIED.

2.    *Motion to Suppress Evidence Seized Beyond the Scope of the Search Warrant*

Defendant seeks the suppression of all evidence seized in support of the illegal distribution of controlled substances charges (Counts 17-25 of the Indictment) and the immigration fraud charges (Counts 26-39) on the grounds that the magistrate judge only found probable cause for health care fraud.  The basis of Defendant's argument is that the face of the Application and Affidavit for Search Warrant (on all three search warrants) stated that the property being searched for constituted "evidence of the commission of a federal crime concerning a violation of Title  18  United States Code, Section  1347 ," which pertains only to health care fraud.

Defendant relies exclusively on a recent Sixth Circuit decision in support of his position. *See United States v. Abboud*, 438 F.3d 554 (6th Cir. 2006).   In *Abboud*, the face of the Search Warrant stated that the property to be seized "constitutes fruits, evidence and instrumentalities of crimes against the United States, concerning violation of Title 18 United States cod, Section 1344," but the incorporated affidavit in support thereof set forth several additional offenses for which the affiant also found probable cause. *Id.*  at 568.  The *Abboud* court stated that it could not "determine whether the magistrate in this case found probable cause for all of the violations listed in the affidavit or only for the violation listed on the face of the warrant.  The government bears the burden of showing probable cause in connection with a search warrant. . . .

21

In this case, the only certainty is that the magistrate found probable cause with respect to the violation of 18 U.S.C. § 1344. *Id.* at 569. The Court eventually stated that it would "not uphold a search warrant based on such tenuous grounds." *Id.* at 570.

The Court is not persuaded by Defendant's argument. First, Fed.R.Cr.P. 41 does not require that the face of the warrant to list or reference any specific crimes. Second, the *Abboud* decision was decided approximately two years after the Affidavit in this case was drafted; as such, it could not have been the governing law when Special Agent Cool-Llorens prepared it. Third, the *Abboud* panel actually upheld the defendant's conviction on the grounds that the evidence which should have been suppressed was not prejudicial. *Abboud*, 438 F.3d at 578-79. As such, the *Abboud* court's statements that only evidence of the crimes enumerated on the cover page of a search warrant application would be admissible (because that is the only part of the search warrant the magistrate approved) is dicta. Fourth, the *Abboud* dicta is inconsistent with the Supreme Court's holding in *Groh v. Ramirez*, 540 U.S. 551 (2004). As recognized in *United States v. Kaechele*, 2006 WL 3510898 at *6 (E.D. Mich. 2006) (Rosen, J.) (quoting *Groh*, 540 U.S. at 561), a reviewing court's focus should be on

> whether a warrant and any accompanying, properly incorporated documents, viewed together, sufficiently "describ[e] the place to be searched, and the persons or things to be seized," U.S. Const. amend. IV, thereby channeling the activities of the officer executing the warrant and "assur[ing] the individual whose property is searched or seized the lawful authority of the executing officer, his need to search, and the limits of his power to search."

Defendant also seeks suppression of all evidence seized at the Residence on the grounds that the Affidavit provided insufficient probable cause for the agents to search the Residence. The Court disagrees. The Affidavit includes a statement of a former employee

22

(identified as confidential source three) that Defendant routinely took home as many as 15 patient files a night.  In addition, the Affidavit states that the trash taken from Defendant's home on April 7, 2004, demonstrated that Defendant had taken home records of patients' laboratory results, laboratory bills, billing data, and HMO and Medicaid eligibility lists, all of which corroborated the information provided by confidential informant three.  As such, the Affidavit afforded Magistrate Judge Mazjoub sufficient information from which she could determine that there was probable cause to search the Residence.

Accordingly, for the reasons set forth in this Section, Defendant's Motion to Suppress Evidence Seized Beyond the Scope of the Search Warrant is DENIED.

3.      *Motion for Evidentiary Hearing and to Suppress Evidence Seized Pursuant to Search Warrants because of Violations of the Reasonableness and Particularity Clauses of the Fourth Amendment*

Defendant seeks an evidentiary hearing and the suppression of all evidence taken at the Medical Office and the Residence on the grounds that (a) the Government agents engaged in unreasonable conduct during the searches, namely, an invasion of privacy of the Defendant's patients; and (b) the seizures violated the Reasonableness and Particularity Clauses of the Fourth Amendment.   First, as to relying on the alleged invasion of privacy as grounds for suppressing evidence, the Court is unaware of any authority that would require the Court to suppress evidence because agents withheld clothing or medical care from a third party during a search, even if the allegations were true.  As such, the Court rejects the alleged invasion of privacy claim of Defendant as a basis for conducting an evidentiary hearing or suppressing evidence.

More significantly, Defendant argues that the search warrants did not include a description of the things to be seized at the time the searches were executed (*i.e.*, Defendant asserts that the

"Attachment A" the Government claims was attached to the Affidavit was not brought to the Medical Office or the Residence at the time of the searches).   Defendant first suggests that the Search Warrants don't make reference to an "Attachment A" and, as such, Attachment A could not have been a part of the Search Warrants presented at the search scenes.  Defendant is correct that the Applications and the Search Warrants do not say  "See Attachment A" where the description of the property to be seized is to be entered.  Clearly,  Special Agent Cool-Llorens entered  "See Attached Affidavit" in that space.  The Court finds that this notation was a harmless error, as Attachment A was attached to both the Application filed with the Court and the executed Search Affidavit filed with the Court.  Moreover, the Affidavit attached to the Application specifically refers to Attachment A when discussing the items to be seized.

Defendant next argues that Attachment A was not provided to Defendant (or his agents) at the search of the Medical Office or the Residence.   In support of this contention, Defendant first argues that Attachment A could not have been at the search scenes because the Affidavit (and therefore Attachment A) were sealed.  Defendant relies on the Court docket for this case, which indicates that there were sealed matters on July 12, 2004 (the day of the search warrant applications) and that the sealed matters were "Document[s] Placed in Vault."  Therefore, Defendant asserts that if the documents were in the Vault, they could not have been at the site of the searches, as the Government asserts was the case.  Defendant also relies on the affidavit of his counsel regarding his counsel's conversations with the Government agents at the time of the search.  Defendant's counsel called Defendant's office during the search and asked an agent for a "complete copy of the search warrant," including the "Attached Affidavit."   Defendant's counsel states that he was told that it was under seal and that neither Defendant nor counsel could be provided a copy of the "Attached

24

Affidavit." Defendant therefore concludes that Attachment A was not at the search sites and, accordingly, there was no way the executing officers could have known what was to be seized with any particularity.

In response, the Government contends that the Search Warrants signed by Magistrate Judge Majzoub were provided to Defendant at the search scenes (and later were filed with the Court) and that Attachment A was physically attached to all Search Warrants. In its initial response briefs and at the hearing, the Government stated that the Defendant acknowledged receipt of Attachment A at the Residence and the Government represented that one his employees did the same at the Medical Office. Despite the Government's suggestions that it would produce documentation and/or affidavit testimony that Attachment A was possessed by agents at the searches of the Medical Office and the Residence, the Court finds that the Government has not done so at this time. In reviewing the affidavit of HHS-OIG Agent Scott A. Vantrease (the only affidavit submitted by the Government which addressed the search), the Court concludes that the statements of Agent Vantrease, at best, create an issue of fact as to whether agents had a copy of Attachment A with them during the searches.

The Government urges the Court to follow the Ninth Circuit's decision in *United States v. Hector*, 2007 WL 177826 (9th Cir.), wherein the Ninth Circuit recently held that under the exclusionary rule, a court is not required to suppress a search warrant on the grounds that agents failed to serve a defendant with it. This Court finds *Hector* inapplicable to this case. The decision in *Hector* turned, in large part, on the fact that there was no question that there was a valid search warrant and that, as such, it did not matter that the defendant was not shown the search warrant. *Relying on Hudson v. Michigan*, 126 S.Ct. 2159 (2006). In this case, Defendant has challenged (a)

25

that the search warrant satisfies the Fourth Amendment Reasonableness and Particularity Clauses, and (b) the validity of the Search Warrants.  As such, there remains a dispute as to whether the Search Warrants (including the Affidavit and Attachment A) were, in fact, what the Government has asserted them to be and/or whether agents conducting the search knew the items they were to seize.

Accordingly, the Court concludes that an evidentiary hearing will be necessary to determine whether the Search Warrants satisfy the Reasonableness and Particularity Clauses of the Fourth Amendment and whether the agents had a copy of Attachment A at the search scenes.  Until such time as the evidentiary hearing is conducted, however, the Court shall withhold a decision as to whether evidence seized pursuant to the search warrants should be suppressed.

For the foregoing reasons, the Court grants Defendant's Motion for Evidentiary Hearing but holds in abeyance Defendant's Motion to Suppress Evidence Seized Pursuant to Search Warrants.

**D.     Miscellaneous Motions**

*1.     Renewed Motion for Modification of Conditions of Release and for Permission to Travel*

On November 17, 2006, the Court denied Defendant's request to modify the conditions of release so that Defendant could defend/prosecute an action involving his brother in Lebanon (where his brother allegedly forged Defendant's checks) and to visit his ailing father. Defendant renews his request (which is to travel to Lebanon for 7 days) for several reasons: (I) the hearing in Lebanon scheduled for November 2006 was adjourned to Monday, February 19, 2007, (ii) his belief that the amount of fine to which Defendant is subject is far less than the Government's representations, and (iii) his belief that developments in this case, as set forth in his motions, demonstrate that Defendant has been wrongly indicted because of the actions of his brother. Defendant also maintains no risk of flight because he has resided here for 31 years and his wife and

26

3 minor children live in Dearborn.

The Government responds that Defendant used the same argument about needing to attend a hearing in Lebanon in November, *i.e.*, that the hearing could not be adjourned and Defendant would be facing criminal prosecution upon his return. The Court agrees and, as the hearing was in fact adjourned, finds even less reason to grant Defendant's request on that basis. Second, contrary to Defendant's assertions, the Court does not find that the developments in this case serve to demonstrate that he was wrongly indicted. There are many questions of fact for a jury to decide and no charges have been thrown out. Third, Defendant apparently has misrepresented to the Court the number of times to which he has traveled to Lebanon since emigrating to the United States. While he stated that it was four times in 31 years, his passport demonstrates that he has made at least six trips to Lebanon in the past 13 years. Finally, the amount of potential liability to which Defendant is subject is not clearly as little as Defendant suggests (approximately $200,000).

For the reasons set forth above and in the Court's Order dated November 17, 2006, Defendant's Renewed Motion for Modification of Conditions of Release and for Permission to Travel is DENIED.

2.   *Motion to Remove Affidavits of Interest Filed by the Government Against Certain Real Property*

Pursuant to M.C.L. §565.41, the Government has filed Affidavits of Interest against the following real property owned by Defendant, asserting that it is "aware of certain fact(s), condition(s), and event(s), proscribed by [statutes] which may terminate an interest in an estate or an interest in real property": (a) "Palmer Crossing" on Haggerty Road, Canton ("Palmer Crossing"), (b) 301 Golfcrest, Dearborn, (c) the Residence, and (d) the Medical Office. In addition, the Government has already seized $75,980 in U.S. Currency from the Residence during the search on

27

July 13, 2004.

In the Indictment filed against Defendant, the Government never specifically mentions that it will seek forfeiture of any property other than the $75,980, however, it does state that upon conviction, Defendant shall forfeit to the United States

> property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense(s) as set forth in 18 U.S.C. §981(a)(7), including but not limited to, $75,980.00 . . .

In addition, at Paragraph 62 of the Indictment, the Government sets forth "substitute assets" in which the real property described in (a) - (d) above is listed, as is a fifth property, 2234 Ford Road, Dearborn.

Defendant currently has a purchase offer on the Golfcrest property which provides that the sale must occur between February 15 and February 28, 2007, or the buyer claims he will walk away. The Government has refused to remove the Affidavit of Interest with respect to that property so that Defendant can sell it.

Defendant argues that because no real property was specified in the Indictment as property to be forfeited, the Court should order the Government to remove those Affidavits of Interest. Defendant further argues that it is impermissible to restrain substitute assets. The Court's review of Fed. R. Cr. P. 32.2(a), however, leads it to conclude otherwise.

> As courts have held, subdivision (a) is not intended to require that an itemized list of the property to be forfeited appear in the indictment or information itself . . . It does not require a substantive allegation in which the property subject to forfeiture, or the defendant's interest in the property, must be described in detail.

Federal Criminal Code and Rules (Thompson/West 2006) at 154 (citation omitted).

Finally, Defendant argues that the Affidavits of Interest with respect to Haggerty

Road, Golfcrest and the Residence were not properly founded.  In support of that argument, Defendant notes that those Notices were filed seven months before the Indictment.  Therefore, Defendant asserts that they constitute pretrial restraints.  Defendant also asserts that the Government did not allege a basis upon which the Government could terminate Defendant's interests, as required under the statute, and that the value of such properties, impermissibly, far exceeds the amounts at issue in this case.  However, M.C.L. 565.45a requires only that there be probable cause to believe that the Defendant committed offenses that give rise to forfeiture.  There is no requirement that a forfeiture action, criminal indictment or other action be instituted prior to an Affidavit of Interest being filed.  At this time, the Court is not persuaded that the value of such properties (particularly as they may be heavily financed) exceeds the potential monetary liability that Defendant faces if convicted on the charges brought against him.

In addition, as the Government brought to the Court's attention at the hearing, the Government recently filed another civil forfeiture suit against all of the properties such that they all have Notices of Lis Pendens recorded against them.  As such, the relief sought by Defendant with respect to his Motion to Remove Affidavits of Interest is meaningless, even if the Court would have granted it.

Accordingly, and for the reasons set forth in this section, Defendant's Motion to Remove Affidavits of Interest is DENIED.

### 3.   *Motion to Strike Affidavits*

Defendant asks the Court to strike the affidavits attached to the Government's supplemental brief because (a) they include factual information to which Defendant has not had an opportunity to respond, (b) they are untimely, (c) they are significantly incomplete, and (d) Special

Agent Berchtold's Affidavit misrepresents important factual information.

The Court first notes that it did not rely on Special Agent Berchtold's affidavit in deciding the foregoing motions. In addition, as noted in Section III.C.3. above, Agent Vantrease's affidavit does not provide the Court with any information that would cause the Court to rule in favor of the Government with respect to the issues raised by Defendant in his Motion to Strike Affidavit (*i.e.*, the existence of Attachment A at the search scenes). As such, the concerns cited by Defendant as reasons to strike the affidavits have been rendered moot. The Court therefore denies Defendant's Motion to Strike Affidavits.

## IV. CONCLUSION

Accordingly, for the reasons stated above, Defendant's

1.   Motion for Discovery (Docket #31) is DENIED WITHOUT PREJUDICE.

2.   Motion for Discovery of Expert Witnesses (Docket #32) is GRANTED IN PART and DENIED IN PART.

3.   Request for Notice of Intent to Use Other Crimes, Wrongs or Acts at Trial (Docket #29) is DENIED WITHOUT PREJUDICE.

4.   Motion for a Bill of Particulars (Docket #30) is DENIED IN PART and GRANTED IN PART.

5.   Motion to Dismiss Counts 35-39 (Docket #34) is DENIED.

6.   Motion to Dismiss Counts One, Two and Three is DENIED.

7.   Motion to Dismiss the Indictment as Duplicitous Because of Incorporation of Paragraphs 10-17 in Every Count (Docket #33) is DENIED.

8.   Motion for a *Franks* Hearing (Docket #36) is DENIED.

9.   Motion to Suppress Evidence Seized Beyond the Scope of the Search Warrant (Docket #37) is DENIED.

10. Motion for Evidentiary Hearing because of Violations of the Reasonableness and Particularity Clauses of the Fourth Amendment (Docket #38) is GRANTED but the Motion to Suppress Evidence Seized Pursuant to Search Warrants because of Violations of the Reasonableness and Particularity Clauses of the Fourth Amendment (Docket #38) remains before the Court, pending an evidentiary hearing.

11. Renewed Motion for Modification of Conditions of Release and for Permission to Travel (Docket #64) is DENIED.

12. Motion to Remove Affidavits of Interest Filed by the Government Against Certain Real Property (Docket #39) is DENIED.

13. Motion to Strike Affidavits (Docket #72) is DENIED.

In addition, the parties are hereby notified that an evidentiary hearing is scheduled for Tuesday, March 27, 2007, at 10:30 a.m., for the purposes of determining whether (a) the Search Warrants satisfy the Reasonableness and Particularity Clauses of the Fourth Amendment, and (b) a list of the items to be seized was present at the search scenes.


IT IS SO ORDERED.


                                        s/Lawrence P. Zatkoff
                                        LAWRENCE P. ZATKOFF
                                        UNITED STATES DISTRICT JUDGE

Dated:  March 13, 2007


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 13, 2007.

                                        s/Marie E. Verlinde
                                        Case Manager

31

(810) 984-3290