UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                    CASE NO. 06-20324
                                             HON. LAWRENCE P. ZATKOFF

       Plaintiff,

vs.

ALI S. MAKKI, M.D.,

       Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on April 12, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

Defendant previously filed a Motion to Suppress Evidence Seized Pursuant to Search Warrants Because of Violations of the Reasonableness and Particularity Clauses of the Fourth Amendment (Docket #38).  Pursuant to the Court's Opinion and Order dated March 13, 2007, a decision regarding that motion was held in abeyance pending an evidentiary hearing to determine whether there was a list of the items to be seized present at the search locations and/or whether such a list was given to Defendant.  On March 27, 2007, March 9, 2007, and April 5, 2007, the Court heard witness testimony and arguments of counsel as to whether the search warrants should be suppressed.  Six witnesses testified.  A summary of the testimony pertinent to deciding the issues before the Court is set forth below.

## II.  WITNESS TESTIMONY

The Government called four witnesses: HHS-OIG Special Agent Scott Vantrease, HHS-OIG Special Agent Scott Noullet, FBI Special Agent Sandra Berchtold and FBI Special Agent Patricia Rossiter.  Each of the four agents testified to the following:

(1)     He or she participated in the search of either the Medical Office or the Residence;

(2)     Each attended a briefing the morning of the search, at which time Special Agent Cool-Llorens outlined the plan for executing the searches of the Medical Office, the Residence and the Lab;

(3)     At the briefing, every agent in attendance was provided a copy of operation plans, the face sheet of the search warrant for the location he or she would search, and a list of items to be seized; and

(4)     He or she had a copy of list of items to be seized in his or her possession when conducting the search.

The Court found the testimony of all four agents to be honest, forthright and credible.

Defendant called two witnesses: Michael Cafferty, a lawyer who has represented Defendant primarily on civil matters, and James Smith, a retired HHS-OIG Special Agent.  Mr. Cafferty testified that he received a call from Defendant during the search of the Medical Office.  Mr. Cafferty testified that he asked Defendant to read the search warrant to him, that Defendant said that the search warrant referred to an attachment and that Defendant told him there was no such attachment.  Mr. Cafferty further testified that he talked to an agent and asked for a copy of the attachment but the agent told him that the attachment was under seal and that Mr. Cafferty would have to contact the AUSA on the case to obtain a copy of it.  In the days following the search, Mr. Cafferty memorialized the conversation in a letter to the AUSA on the case and asked for a copy of the items to be seized.  The Court found Mr. Cafferty to be honest, forthright and credible.

2

Special Agent Smith testified that he participated in the search of the Residence but doesn't recall specifically any details related to the search warrant or a list of items to be seized. Special Agent Smith stated that he participated in at least three dozen searches while working for HHS-OIG, and there was a list of items to be seized in every search except one. He stated that he would remember if there wasn't a list of items to be seized when he searched the Residence. Although Special Agent Smith was vague, his testimony also was credible.

## III.  ANALYSIS

After presiding over the evidentiary hearing, examining the exhibits submitted to the Court at the hearing and attached to the parties' briefs, and reviewing notes of the witness testimony, the Court concludes (1) the search warrants issued in this case were valid; (2) the agents conducting the searches at the Medical Office and the Residence possessed a list of the items to be seized; (3) it is unclear whether Defendant or one of his agents was presented with a list of items to be seized at the Medical Office and/or the Residence; and (4) even assuming a list of items to be seized was not presented to Defendant or one of his agents at the Medical Office or the Residence, the agents did not violate Defendant's Fourth Amendment rights in this case. Accordingly, Defendant's Motion to Suppress as a result of alleged violations of the Reasonableness and Particularity Clauses of the Fourth Amendment is denied.

### A.    *Search Warrants were Valid*

As noted in the Court's March 13, 2007, Opinion and Order, Attachment A (the list of items to be seized) was attached to both the Application filed with the Court and the executed Search Warrants filed with the Court. No evidence (or argument) was presented at the evidentiary hearing

which raises any question that the list of items to be seized (Attachment A) was attached to the search warrants issued in this case.  In addition, as the Court stated in the March 13, 2007, Opinion and Order, because "the Affidavit [filed in support of the Application] clearly afforded Magistrate Judge Mazjoub probable cause to believe there was evidence of health care fraud (and other crimes), the Court concludes that Defendant's contention that the Affidavit failed to support a finding of probable cause is baseless."  In other words, the Court concludes that the search warrants issued in this case were valid.

> B.    *List of Items to Be Seized Possessed by Agents at the Search Locations*

As noted above, the Court found all of the witnesses to be credible and trustworthy.  The actual details remembered by each of the four agents (the Court does not include Special Agent Smith, who testified without much specificity but still consistent with the other agents) were not exactly the same, but their testimony (as detailed in Section II above) demonstrates that each and every one of them recalls that he or she was given a list of items to be seized and that he or she had such a list with him or her at the search scene.  Special Agent Rossiter specifically recalled having the list of items to be seized on her person at the search.  She stated that she (along with other agents) consulted the list of items to be seized (Attachment A) during the search of the Residence. In fact, Special Agent Rossiter had a copy of Attachment A in her file for this case.

No evidence was offered to contradict the testimony of the agents that they had a copy of the list of items to be seized in their possession as they conducted the search.  Therefore, based on the evidence presented, the Court concludes that the agents had a list of items to be seized on their persons when conducting searches of the Residence and the Medical Office.

> C.    *Unclear Whether Defendant was Provided a List of Items to Be Seized*

4

In a light most favorable to the Government, the testimony of the agents was that they saw Defendant or one of his agents receive copies of the Search Warrants and that there were several pages attached to the Search Warrants.  None of the agents, however, could say that they knew Defendant was given a copy of Attachment A or any other list of items to be seized.  Moreover, despite the presence in court on March 25, 2007, of the Special Agent who allegedly handed a copy of the search warrant to Defendant or his agent at the Residence, the Government did not call her or any other agent who could say Defendant was handed a list of the items to be seized.

Defendant's contention that he received only a copy of the face page of the search warrants was introduced through Mr. Cafferty, a credible witness, and the arguments of his current counsel. Mr. Cafferty was not present at either of the search locations, however, and his testimony as to what Defendant was provided is primarily based on what Defendant told him over the phone (*i.e.,* that there was no attachment to the search warrant that set forth a list of the items to be seized). Defendant did not take the stand, nor was there any other witness who testified that he or she saw that Defendant (or one of his agents) received only the face page of the search warrant at either or both of the search locations.

Defendant's position is strengthened by the fact that Mr. Cafferty testified that he was told by an agent that the attachment was under seal and that Mr. Cafferty would have to contact the AUSA on the case to get a copy of it.  While there may have been a misunderstanding between the agent and Mr. Cafferty as to what Mr. Cafferty was asking for (as the Government suggests), the Court is not yet persuaded that the Government has shown that Defendant was provided with a copy of a list of the items to be seized at either the Medical Office or the Residence.  As discussed in Section III.D. below, however, for purposes of deciding Defendant's Motion, it is irrelevant whether

Defendant received a list of the items to be seized at either location.  For purposes of this Opinion, the Court shall assume, without deciding, that Defendant received only the face page of the search warrants.

        *D.*     *Applicable Law*

In *Hudson v. Michigan*, 126 S.Ct. 2159 (2006), the U.S. Supreme Court ruled that a knock-and-announce violation did not require suppression of the evidence obtained in a search because the violation was not the unattenuated but-for cause of obtaining the evidence.  In *Hudson*, the police had a valid search warrant for drugs and firearms but entered the defendant's home in violation of the knock-and-announce rule.  The Supreme Court stated: "Whether [the violation] had occurred *or not*, the police would have executed the warrant they had obtained, and would have discovered the gun and drugs inside the house." *Hudson*, 126 S.Ct. at 2164 (emphasis in original).

As the Ninth Circuit stated in analyzing the *Hudson* decision:

> The Court went on to observe that even if the constitutional violation "could be characterized as a but-for cause of discovering what was inside," the exclusionary rule would not apply if the causal connection was "attenuated" - i.e., if the causal connection was remote or if "the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." *Id.*  The Court concluded that the exclusionary rule was inapplicable because the knock-and-announce requirement is aimed at protection of human life and limb, property, and privacy, not "the shielding of potential evidence from the government's eyes." *Id.* at 2165.
>
> Finally, the Court noted that "[q]uite apart from the requirement of unattenuated causation, the exclusionary rule has never been applied except where its deterrence benefits outweigh its substantial social costs." *Id.*

*United States v. Hector*, 474 F.3d 1150, 1154-55 (9th Cir. 2007).

Here, as in *Hudson*, given that a valid search warrant entitled the agents to look for the items

listed on Attachment A at the Medical Office and the Residence, "[r]esort[ing] to the massive remedy of suppressing evidence of guilt is unjustified." *Hector*, 474 F.3d at 1155 (quoting *Hudson*, 126 S.Ct. at 2168). Regardless of whether the agents had shown Defendant the search warrant, they would have executed it and found the items seized inside the Medical Office and the Residence. Therefore, "while the acquisition of the [evidence seized by the agents] was the product of a search pursuant to a warrant, it was not the 'fruit of the fact' that the [agents failed to provide Defendant with a list of items to be seized]." *Hudson*, 126 S.Ct. at 2169.

In addition, the causal connection between any failure to provide Defendant with a list of the items to be seized and the evidence actually seized is

> highly attenuated, indeed non-existent, in this case. . . . [as] the only legitimate interest served by the presentation of [the list of items to be seized] . . . is to head off breaches of the peace by dispelling any suspicion that the search is illegitimate. . . . This interest does not implicate the seizure of evidence described [in the list of items to be seized] in the search warrant nor would it be vindicated by suppression of the evidence seized.

*Hector*, 474 F.3d at 1155.

Accordingly, in light of the rationale of the exclusionary rule and the considerations set out by the Supreme Court in *Hudson*, the Court concludes that suppression of the evidence in this case would not be an appropriate remedy.

## IV.  CONCLUSION

Accordingly, for the reasons stated above, the Court DENIES Defendant's Motion to Suppress Evidence Seized Pursuant to Search Warrants because of Violations of the Reasonableness and Particularity Clauses of the Fourth Amendment (Docket #38).

IT IS SO ORDERED.

s/Lawrence P. Zatkoff_____
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  April 12, 2007

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on April 12, 2007.

s/Marie E. Verlinde_____
Case Manager
(810) 984-3290

8